UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IBM SOUTHEAST EMPLOYEES          ]
FEDERAL CREDIT UNION and         ]
SOUTHEAST SERVICES               ]
ORGANIZATION, INC.               ]
                                 ]
v.                               ]          No. 3-07-0894
                                 ]          Judge Haynes
MICHAEL E. COLLINS,              ]
Chapter 11 Trustee               ]

M E M O R A N D U M

This action is an appeal under 28 U.S.C. § 158(a) from the
Bankruptcy Judge's Order of July 18, 2007, by IBM Southeast
Employees Federal Credit Union ("IBMSEFCU") and Southeast Services
Organization, Inc. ("SSO"). The Order granted in part and denied
in part Defendants' motion to dismiss, but granted Defendants'
motion for abstention.

Michael E. Collins, as Trustee of Alliance Leasing Corporation
("Alliance"), filed an adversary complaint against IBMSEFCU and SSO
and a later amended complaint asserting claims of breach of
contract, negligence, and intentionally tortious conduct. (Docket
Entry No. 1, Notice of Appeal, Attachments thereto, Exhibits 3 and
15). The Defendants filed a motion to dismiss based on *res
judicata*, id. at Exhibit 5, lack of standing and subject matter
jurisdiction, failure to state a claim for relief, and
alternatively, mandatory or discretionary abstention.

In its July 18, 2007, Order, the Bankruptcy Court denied Defendants' motion to dismiss on the basis of *res judicata* with prejudice and denied the motion without prejudice on standing and subject matter jurisdiction contentions. The Bankruptcy Court granted the motion to dismiss Counts IV and V of the amended complaint, and granted Defendants' motion for permissive abstention on the remaining eight counts. Id. at Exhibit 20. This appeal contests the Bankruptcy Judge's Order denying their motion to dismiss based on the *res judicata* defense. The Court heard oral argument on this matter on December 18, 2007.

For the reasons set forth below, the Bankruptcy Judge's Order is AFFIRMED.

## I. BACKGROUND

Prior to its bankruptcy, Alliance operated an automobile leasing and brokerage business with its primary service to credit unions in the Southeast. SSO is a credit union service organization affiliated with IBMSEFCU. SSO entered into a Service Agreement with Alliance on August 22, 1994. Under this agreement, SSO agreed to promote Alliance's leasing services to Florida credit unions.

On February 28, 2005, Alliance filed a Chapter 11 petition in Bankruptcy Court. Michael E. Collins was appointed Chapter 11 Trustee of Alliance on March 9, 2005. In April 2006, the Trustee filed the Trustee's Third Amended Plan of Liquidation ("the Plan")

2

and the Third Amended Disclosure Statement ("the Disclosure Statement"). As to retention of jurisdiction and claims, the Plan provides the following:

### VII. RETENTION OF JURISDICTION

A. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 case after the Effective Date as is legally permissible, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any claim or equity interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of claims or equity interests, including subordination of claims;

2. Adjudicate any claims by the Debtor or Plan Trustee against third-parties;

3. Grant or deny applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

4. Enter such orders necessary to carry out the provisions of the Plan;

5. Resolving any disputes as to the distributions to be made under the Plan;

6. Determine and resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any other document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order; and

7. Enter a final decree concluding the Chapter 11 case.

3

B. The Plan contemplates significant post-confirmation litigation and, consequently, retention of jurisdiction by the Bankruptcy Court is an essential component of the Plan.

VIII. MISCELLANEOUS PROVISIONS

. . . .

D. Retention of Causes of Action – All rights and causes of action held by the Debtor or the Trustee prior to confirmation shall be transferred to the Plan Trustee, as successor in interest, regardless of whether such rights or causes of action came into being pre-petition or post-petition.

(Docket Entry No. 2, Notice of Appeal, Attachment thereto, Exhibit

20 at pp. 15-16).

The Disclosure Statement provides, in relevant part, the

following:

VI. POST-CONFIRMATION ACTIVITIES

Upon confirmation of the Plan, the Trustee anticipates that additional litigation will be necessary. The pending adversary proceedings, as noted above, will continue to be prosecuted by the Plan Trustee. The Plan Trustee shall be responsible for reviewing claims filed by creditors and prosecuting objections to the same, where necessary.

Additionally, the Plan Trustee may file additional avoidance actions. The Plan provides that all actions to avoid liens on the vehicles shall be filed no later than 120 days after the Effective Date. The Plan Trustee shall file all other avoidance actions within the time allotted by statute. The Plan Trustee will also continue investigating the causes of the bankruptcy. If the Plan Trustee determines that the estate has claims against creditors or third parties, the Plan Trustee shall pursue such claims on behalf of the Liquidation Trust. The Confirmation Order will include a finding that the Plan Trustee has standing to pursue each and every claim of the estate.

4

In addition to potential avoidance actions and claim objections, the Plan Trustee shall continue to evaluate potential claims against insiders of the Debtor and potential claims against IBM Southeast Employees Federal Credit Union relating to its involvement in promoting Alliance's operations.

Id., Exhibit 26 at p. 8.

On July 27, 2006, the Trustee circulated a draft order confirming the Plan to IBMSEFCU's counsel. (Docket Entry No. 1), Attachment thereto, Exhibit 10. The initial draft order included the following language:

ORDERED that the assets vested in the Liquidation Trust shall include, but are not limited to, any and all causes of action held by the Estate against IBM Southeast Employees Federal Credit Union, Southeast Services Organization, Inc., Vincent Gene Handy, R. Michael Whitmore, and their respective officers, directors, affiliates and subsidiaries; and it is further

. . .

ORDERED that the injunction set forth in ¶ IV.E.2. of the Plan shall not apply to any action against a Credit Union or other entity for turnover or damages based upon such Credit Union's or entity's negligent or intentional failure to perform its responsibilities or duties to collect and/or remit sales and use taxes to the appropriate authorities; and it is further . . . .

Id. at pp. 5-6.

On July 27, 2006, in his email response to the Trustee, IBMSEFCU's counsel questioned the paragraph addressing the preservation of claims relating to the handling of the tax accounts. Id., Exhibit 11. By email dated July 28, 2006, the Trustee responded, "The language was my attempt to carve out from the injunction any actions against IBM Southeast Employees FCU,

5

Southeast Services, their respective officers, Handy and Whitmore based upon the management of the tax escrow accounts." Id., Exhibit 12.

IBMSEFCU's counsel requested the Trustee not to refer specifically to IBMSEFCU and SSO for fear that the order would be circulated to over thirty credit unions in the state of Florida subjecting IBMSEFCU and SSO to embarrassment and damage in their business interests in Florida. The Trustee responded that the estate's interest was not to cause damage to IBMSEFCU's and SSO's business interests and agreed to replace the specific reference to claims against IBMSEFCU and SSO with a more general reference to the entities that may be sued. Yet, the Trustee told IBMSEFCU's counsel that he intended to preserve all claims against IBMSEFCU and SSO, as well as the former officers and directors of the Debtor. The Trustee then modified the language in the Confirmation Order

On August 21, 2006, the Bankruptcy Court entered the Order confirming the Plan. The relevant terms of the Order for the purposes of deciding this motion are as follows:

ORDERED that the assets vested in the Liquidation Trust shall include all assets of the Estate of any kind and nature whatsoever, including, but not limited to, any and all causes of action that could be brought by a trustee pursuant to chapter 5 of the Bankruptcy Code, or that were held by the Estate against any individual or entity arising out of or relating to the business operations of the Debtor; and it is further

. . .

6

**ORDERED** that all state taxing authorities are hereby enjoined from commencing or continuing any action to collect the sales tax liabilities from the Credit Unions or the Credit Unions' customers; provided, however, that such injunction shall not apply with respect to sales tax liabilities on any Leased Vehicle for which Alliance has not collected sales tax from the customer, Credit Union or creditor; and it is further

**ORDERED** that the injunction set forth above and in IV.E.2 of the Plan shall not apply to any claims that may be asserted by the Plan Trustee relating to liability of any individual or entity arising from negligent or intentional mishandling, if any, of sales taxes collected from Customers and deposited or required to be deposited into Alliance tax escrow accounts . . . . .

(Docket Entry No. 2, Attachment thereto, Exhibit 30 at p. 5). (emphasis in original).[1]

IBMSEFCU and SSO contend that the Bankruptcy Court erred in denying with prejudice Defendants' motion to dismiss based on *res judicata* because the claims in the Amended Complaint were not properly reserved in the Plan, Disclosure Statement and/or Confirmation Order. IBMSEFCU and SSO contend that the Trustee

---

[1]Section IV.E.2 of the Plan provides:

2. Confirmation of this Plan shall constitute an order enjoining the state taxing authorities holding priority tax claims relating any of the Leased Vehicles from commencing or continuing any action to collect the sales tax liabilities from the Credit Unions or the Credit Unions' customers; provided, however, that such injunction shall not apply with respect to any Leased Vehicle for which Alliance has not collected sales tax from the customer, Credit Union or creditor. The Confirmation Order shall specifically provide for and describe this channeling injunction.

Id., Attachment thereto, Exhibit 20 at 12 (emphasis in original).

7

failed to disclose and identify adequately the facts and circumstances pertaining to such claims.

In response, the Trustee contends: (1) that Defendants have failed to establish all of the elements of *res judicata*; (2) that the claims in the Amended Complaint were adequately preserved in the Plan, Disclosure Statement and Confirmation Order; (3) and that Defendants should be estopped from asserting the *res judicata* defense.

## II. STANDARD OF REVIEW

"The standard of review on appeal is determined by the nature of the action taken below by the bankruptcy court." In re Terex Corp., 984 F.2d 170, 172 (6th Cir. 1993).

> The standard of review . . . appl[ied] to [a] bankruptcy court's decision depends on whether that decision resulted in a modification of the amended plan, and thus was made in reliance upon or was based on an interpretation of the Bankruptcy Code, or rather simply involved the bankruptcy court's interpretation of that plan.

In re Dow Coring Corp., 456 F.3d 668, 674-75 (6th Cir. 2006) (citing In re Dial Bus. Forms, Inc., 341 F.3d 738, 744 (8th Cir. 2003) ("'[A] bankruptcy court's interpretation of a confirmed plan should be reviewed under the abuse of discretion standard.'")).

Defendants argue that the Bankruptcy Court's decision on the issue of *res judicata* is a legal conclusion of law 11 U.S.C. §

8

1123(b)(3)[2] and therefore, the standard of review should be *de novo*. The Trustee argues that the Bankruptcy Court merely interpreted its own order and therefore the abuse of discretion standard of review should control.

In In re Dow Coring Corp., unsecured creditors sought interest at the contract rate as opposed to the lower federal judgment rate provided in the reorganization plan. 456 F.3d at 672. The bankruptcy court sustained the creditors' objections and deemed the plan to have been verbally amended and that the creditors would receive interest in accordance with the terms of the contract. Id. at 673. The district court found that the bankruptcy court's decision was an interpretation of the terms of the plan and was not a modification of the plan and thus applied the abuse of discretion standard of review. Id. On appeal the creditors argued that the bankruptcy court's decision should be reviewed *de novo* because the bankruptcy court's decision effectively modified the amended plan and therefore involved an interpretation of § 1129(b) of the bankruptcy Code, or in the alternative, that because the bankruptcy court did not exercise its equitable powers in interpreting the

---

[2]Title 11 U.S.C. § 1123(b)(3)(A), (B) states:

[A] plan may provide for (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest[.]

Case 3:07-cv-00894 Document 19 Filed 09/17/08 Page 9 of 39 PageID #: 1138

plan, the abuse of discretion standard should not apply. Id. at 675.

The Sixth Circuit examined the bankruptcy court's opinion to determine whether the bankruptcy court interpreted the plan or modified the plan. Id. at 675-76. The Sixth Circuit concluded that the language of the bankruptcy court's opinion reflected interpretation, rather than modification of the amended plan and therefore applied the abuse of discretion standard. Id. at 676; see In re Terex, 984 F.2d at 172 (in action pertaining to 11 U.S.C. § 507(a)(4), Court concluded that "although the bankruptcy court referred to explicit provisions of the Bankruptcy Code, it did not rely on or interpret the Bankruptcy Code.").

Here, the Bankruptcy Court set forth the relevant provisions of the Confirmation Order, the Plan, and the Disclosure Statement. (Docket Entry No. 1, Notice of Appeal), Attachment thereto, Exhibit 18 at pp. 7-9. The Bankruptcy Court then concluded:

Based on these provisions, it is clear to the court that any interested party participating in the confirmation process was aware of the trustee's potential claims against these defendants. A hyper-technical and tunneled interpretation of the Plan and Confirmation Order is the only way to achieve the outcome urged by the defendants. However, a plain meaning interpretation of the Disclosure Statement, Plan and Order confirming the Plan, leads to the conclusion that the trustee adequately preserved the causes of actions he alleges in the present adversary proceeding. Accordingly, the court DENIES the defendants' motion to dismiss based upon res judicata.

Id. at p. 9.

10

Given the language in the Bankruptcy Court's opinion, this Court concludes that the Bankruptcy Court examined the three cited documents together in its interpretation of the plan, rather than modifying the plan based on an interpretation or in reliance of the Bankruptcy Code.

As to the Defendants' argument that under Browning v. Levy, 283 F.3d 761, 772 (6th Cir. 2002), courts must review the application of the *res judicata* doctrine *de novo*, unlike the bankruptcy court in Browning, the Bankruptcy Court here did not "apply" the *res judicata* doctrine. Thus, its ruling is not a legal conclusion, but an interpretation of the three cited documents in denying Defendant's motion to dismiss.

In any event, under either the abuse of discretion or *de novo* standard, the Court concludes that the Bankruptcy Court's Order should be affirmed.

Defendants' argument is that the *res judicata* doctrine bars the Trustee's claims in the Amended Complaint because the Trustee did not adequately disclose and identify the facts and circumstances for these claims against Defendants in the Disclosure Statement, Plan or Confirmation Order. The Trustee contends that Defendants have not established all of the elements of *res judicata* and that the Bankruptcy Court did not abuse its discretion in finding that the Disclosure Statement, Plan and Order adequately preserved the claims the Trustee alleges in the Amended Complaint.

11

## A. *Res Judicata*

To establish *res judicata*, a party must prove all of the following elements: "'(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" Browning v. Levy, 283 F.3d 761, 771-72 (6th Cir. 2002) (quoting Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 880 (6th Cir. 1997)). The party asserting this defense bears the burden of proof. Id. at 772.

A confirmation order constitutes a final judgment in bankruptcy proceedings for purposes of *res judicata*. Id. "Such confirmation by a bankruptcy court 'has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.'" Id. (citation omitted). The Trustee asserts that Defendants have failed to prove the second and third elements of their *res judicata* claim.

### 1. *judicial estoppel*

With respect to the third element, the Trustee contends that Defendants are judicially estopped from asserting that the claims in the Amended Complaint were actually litigated or should have been litigated in the Bankruptcy Court because Defendants

12

successfully argued that the Trustee's Complaint was not properly brought before the Bankruptcy Court. Specifically, the Trustee asserts that based on Defendants' previous arguments, the Bankruptcy Court entered an order voluntarily abstaining from hearing the case and ordering the Trustee to refile the case in Florida or institute arbitration proceedings. The Trustee contends that Defendants, in support of their *res judicata* claim, now take the opposite position and argue that the Trustee should have brought the case in the Bankruptcy Court.

In response, Defendants contend that their *res judicata* position on appeal is not inconsistent with its earlier position requesting permissive abstention, which was granted pursuant to 28 U.S.C. § 1334(c)(1)[3], by the Bankruptcy Court. Defendants assert that the Trustee either should have raised or properly reserved its claims prior to confirmation in the bankruptcy proceeding, explaining that the Trustee could have reserved its claims pursuant to the Plan while litigating the claims in state court or through arbitration. Defendants argue that, although the Bankruptcy Court found that it had some limited, non-core jurisdiction over the Amended Complaint, the Bankruptcy Court exercised its discretion in abstaining from hearing the case, rather than compelling

---

[3]That section provides: "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

13

arbitration. Thus, Defendants argue they did not succeed in persuading the court to exercise mandatory abstention and therefore judicial estoppel does not apply to the third element of their *res judicata* defense.

The doctrine of judicial estoppel prevents a party from "'taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 892 (6th Cir. 2002) (citation omitted). That is, "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" Excel Energy, Inc. v. Smith (In re Commonwealth Institutional Secs., Inc.), 394 F.3d 401, 406 (6th Cir. 2005) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)).

For judicial estoppel, three factors are considered: (1) that a party's later position was clearly inconsistent with its earlier position; (2) that the party succeeded in persuading the court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) that the party advancing an inconsistent position would

14

gain an unfair advantage if allowed to proceed with the argument. Id. at 406.

The Court finds that the circumstances here do not warrant the application of judicial estoppel. Before the Bankruptcy Court, Defendants asserted, as they do now, that the Trustee failed to properly reserve the causes of action alleged in the Amended Complaint. As Defendants demonstrate, their position is not inconsistent because the Trustee could have reserved its claims pursuant to the plan and still litigated those claims in state court or through arbitration.

As alternative arguments, Defendants asserted that the Bankruptcy Court should mandatorily abstain or exercise its discretion in granting permissive abstention. The Bankruptcy Court found that the mandatory abstention doctrine did not apply, but in its discretion, chose to abstain permissively. (Docket Entry No. 1) Notice of Appeal, Attachment thereto, Exhibit 18 at pp. 14-15. Thus, Defendants did not succeed in arguing that the Bankruptcy lacked jurisdiction over the claims at issue. In his brief to the Bankruptcy Court, the Trustee noted that Defendants did not allege that the Bankruptcy Court lacked jurisdiction, stating, "It is noteworthy that the Defendants have not alleged that [the Bankruptcy] Court is without jurisdiction. Rather, the Defendants have asserted that the Court should exercise discretionary abstention." Id., attachment thereto, Exhibit 9 at p. 13. Lastly,

15

because Defendants are not advancing an inconsistent position, they cannot be said to be gaining an unfair advantage if allowed to proceed before this Court.

The Trustee's reliance on Great Earth, 288 F.3d 878 (6th Cir. 2002), is misplaced. In that case, the franchisees argued successfully before a New York district court that Great Earth could not enforce arbitration in New York. After a Michigan district court granted Great Earth's motion to compel arbitration in Michigan, the franchisees appealed to the Sixth Circuit, arguing the inconsistent position that Great Earth was required to seek arbitration in New York. As stated in the paragraph above, that is not the factual situation before this Court. Accordingly, for the reasons stated previously, the Trustee's argument fails.

## 2. Privity

With respect to the second element of the affirmative defense of res judicata, the Trustee contends that Defendants have failed to meet their burden of establishing that SSO was a party to the Bankruptcy proceeding or in privity with IBMSEFCU. The Trustee argues that there is no factual basis in the record to support Defendants' assertion. The Trustee contends that in none of the pleadings do Defendants assert that SSO was a party to the bankruptcy. Further, the Trustee points to the transcript of the hearing before the Bankruptcy Court on June 12, 2007. When asked whether the Defendants had participated in a court proceeding with

16

respect to the confirmation order, counsel for the Defendants responded that IBMSEFCU had, but not SSO, stating, "SSO not a party, not a creditor, pre-petition state law contract, never here, ever, except for today." (Docket Entry No. 11, Notice of Transcript at p. 22).

In response, Defendants assert that SSO was in privity with IBMSEFCU because its interests were represented by IBMSEFCU during the bankruptcy proceeding. Defendants assert that the Trustee at the June 12, 2007, hearing before the Bankruptcy Court, attempted to show the close connection between SSO and IBMSEFCU. The Trustee stated:

> [IBMSEFCU] and [SSO] are separate organizations, we don't dispute that. But . . . let's look at it from less of a technical standpoint and more of a . . . general standpoint. They office out of the same location, they have overlapping officers; [SSO] was a credit union service organization created solely to benefit [IBMSEFCU]. [SSO doesn't] work for any other credit unions for that purpose. So, to the extent that IBMSEFCU has made an appearance in this case . . . as a practical matter both [IBMSEFCU] and [SSO] have been well aware of what has been going on in this case and have made their positions known.

Id. at 45-46.

In the alternative, Defendants assert that the application of nonmutual claim preclusion is appropriate to the facts of this case. Defendants further argue that *res judicata,* in the context of plan confirmation, is less an application of the common law elements and more a question of whether a claim was retained

17

through the plan, with a view to the policy behind 11 U.S.C. § 1123(b)(3)(B) for full disclosure.

Nonmutual claim preclusion pertains to "whether a party not involved in the earlier action may deflect a second lawsuit because he should have been, but was not, included in the earlier suit." In re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir. 1988). In response to Defendants' assertion of nonmutual claim preclusion, the Trustee relies on In re Commercial Loan Corp., 363 B.R. 559 (Bankr. N.D. Ill. 2006), which he cited at the hearing before this Court on December 18, 2007. In that case, the defendants, a law firm and three partners of the law firm, served as outside counsel to the debtor and allegedly assisted the debtor in its illegal activities of overselling participation in commercial real estate and personal property loans to local banks. Id. at 561-63. The defendants moved to dismiss the Trust's complaint on *res judicata* grounds, arguing that the confirmation plan's reservation of claims were not specific enough to exempt the Trust's claims from the confirmation order's preclusive effect. Id. at 564.

The bankruptcy court found that the defendants were not parties to the bankruptcy, let alone participants in the confirmation of the plan. Id. at 569. Nor were the defendants creditors. Id. The bankruptcy court also found that the defendants were not in privity with a party because they never

18

served as the debtor's counsel in bankruptcy. The defendants were essentially "strangers to the case." Id.

The bankruptcy court went on to state that the defendants were in no better position to argue a notice objection to the plan's reservation of claims based on 11 U.S.C. § 1123(b)(3)(B). The bankruptcy court explained:

> The rationale underlying the section 1123(b)(3)(B) approach is that a *creditor* in the bankruptcy is entitled to know about claims that will be pursued post-confirmation under the proposed plan, either because those claims might "enlarge the estate," or because the claims might be aimed at the creditor himself[.]
>
> . . . .
>
> This rationale disappears entirely, however, when the defendant in a post-confirmation action is not a creditor. Specific or general, adequate or inadequate, notice to a non-creditor about claims reserved in a proposed plan serves no purpose because a non-creditor cannot vote on whether the plan should be confirmed. . . [The defendants] were not creditors in the [debtor] bankruptcy. Therefore, they cannot invoke the protections of section 1123(b)(3)(B) and dispute the adequacy of notice in the [debtor] Plan.

Id. at 570 (emphasis in original) (citations omitted).

Turning to the facts of this case, SSO was neither a participant in the confirmation of the Plan nor a creditor and therefore not a party to the bankruptcy. Defendants' reliance on 11 U.S.C. § 1123(b)(3)(B) is misplaced. Accordingly, the doctrine of nonmutual claim preclusion is inapplicable here.

Arguably, a better case can be made for Defendants' contention that SSO is in privity with IBMSEFCU. However, while SSO and

19

IBMSEFCU may share a close business relationship, the two companies are distinct entities and Defendants' counsel reiterated this fact at the June 12, 2007, Bankruptcy hearing. Accordingly, the Court finds that SSO is not in privity with IBMSEFCU. In any event, even if SSO were in privity with IBMSEFCU, as will be discussed infra, Defendants' motion would still fail because the claims asserted in the Amended Complaint were properly reserved in the Plan.

## B. Preservation of Claims

Even if a party establishes all of the elements of res judicata, res judicata will "not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding." Browning, 283 F.3d at 774. Thus, the debtor "must have either adjudicated its claims in the bankruptcy proceeding or reserved them in the reorganization plan or confirmation order." Id. However, "a general reservation of rights does not suffice to avoid res judicata." Id.

Title 11 U.S.C. § 1123(b)(3) is the mechanism employed for preserving rights. The function of § 1123(b)(3) "is not [to provide] notice to potential defendants, it is [to provide] notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." In re Pen Holdings, Inc., 316 B.R. 495, 501 (Bankr. M.D. Tenn. 2004). However, § 1123(b)(3) is silent with

20

respect to the language necessary or sufficient to preserve a particular claim or cause of action. Id. at 499, 501.

Defendants contend that the Trustee failed to preserve adequately the claims of the Amended Complaint in the Disclosure Statement, Plan or Confirmation Order. Specifically, Defendants contend that the Trustee did not provide meaningful information concerning the nature, factual basis or value of such claims and that the Trustee's blanket reservation of claims is insufficient to preserve the claims of the Amended Complaint from the bar of *res judicata*. For their contention, Defendants rely heavily on Browning, supra, and In re Kelley, 199 B.R. 698 (9th Cir. B.A.P. 1996). In response the Trustee contends that the claims in the Amended Complaint were adequately preserved and the Bankruptcy Court's decision does not conflict with Browning. The Trustee relies on In re Pen Holdings, Inc., 316 B.R. 495 (Bankr. M.D. Tenn. 2004). Both parties also cite to In re SmarTalk Teleservices, Inc., 487 F. Supp.2d 914 (S.D. Ohio 2007) in support of their respective positions.

As an initial matter, the Court must decide whether it looks at the Plan, Disclosure Statement and Order collectively as the Bankruptcy Court did or in isolation as Defendants seem to suggest. "In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." In re Dow Coring Corp., 456 F.3d at 676. State

21

law governs such interpretations. Id. In Tennessee courts look at the contract as a whole to determine the intent of the parties. Williamson County Broad. Co. v. Intermedia Partners, 987 S.W.2d 550, 552 (Tenn. Ct. App. 1998); Gredig v. Tennessee Farmers Mut. Ins. Co., 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

In determining the sufficiency of the reservation of claims in order to avoid the application of *res judicata*, courts have looked at the documents collectively. Browning, 283 F.3d at 774 (stating that to avoid *res judicata* the debtor must have "reserved them in the reorganization plan or confirmation order" and comparing the reservation clause in the disclosure statement with the blanket reservation clause found insufficient in In re Micro-Time Management Sys., Inc., Nos. 91-2260, 91-2261, 1993 WL 7524, at *5 (6th Cir. January 12, 1993)); In re Crowley, Milner and Co., 299 B.R. 830, 848-48 (Bankr. E.D. Mich. 2003) (court looking at the reservation of rights in the plan and order); In re Regional Diagnostics, LLC, 372 B.R. 3, 12 (Bankr. N.D. Ohio 2007) (applying contract principles court considered both the disclosure statement and the plan); In re SmarTalk Teleservices, Inc., 487 F. Supp.2d 914 (supplementing plan with disclosure statement); In re Kelley, 199 B.R. at 704 (stating that debtor would be precluded from asserting cause of action if he failed to mention it "in either his schedules, disclosure statements, or plan"). Accordingly, the

Court considers the Plan, Disclosure Statement and Order in this case collectively.

Defendants cite to In re Crowley, Milner and Co., 299 B.R. at 848-49, in support of their argument that the language in the Plan should control over any inconsistency with the Disclosure Statement. Defendants assert that the Plan does not say anything concerning claims against IBMSEFCU in "promoting Alliance's operations" as referenced in the Disclosure Statement. In In re Crowley, Milner and Co., the court found that reservation of rights in the plan and order would trump any inconsistency in the disclosure statement. Id. at 849. However, Crowley does not apply here because there is no inherent inconsistency. There are not any conflicting statements, and read as a whole, the documents supplement each other and should therefore be read in conjunction. See In re Regional Diagnostics, LLC, 372 B.R. at 13 (finding that Crowley did not apply because while the plan and disclosure statement used different language they did not contain conflicting information, the court stated, "In other words, the specific language in the disclosure statement supplements the general reservation in the plan . . . . Far from being in conflict, the two documents support each other. The disclosure statement will, therefore, be read in conjunction with the plan in determining whether litigation rights are reserved[.]").

23

The Court next addresses the sufficiency of reservation of claims. In Browning the plaintiffs sued the defendants, a law firm which had previously represented the debtor corporation and the corporation's majority shareholder, for breach of fiduciary duty, legal malpractice and other claims. The plaintiffs' specific claims were not reserved prior to the conclusion of the bankruptcy proceeding, but in its disclosure statement, the debtor included the following language in its omnibus reservation of rights:

In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

283 F.3d at 768-69.

The Sixth Circuit found this language to be a blanket reservation that "was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the debtor's] claims to be taken into account in the disposition of the debtor's estate." Id. at 775. The Court found significant that the reservation neither named the defendant law firm nor stated the factual basis for the reserved claims and therefore concluded that the language was not sufficient to defeat the application of res judicata. Id.

24

The Trustee urges the Court to apply the test set forth in In re Pen Holdings, which expounds upon Browning. In that case, which dealt with preference claims, the Honorable Keith Lundin stated:

> Browning does not establish a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan. Read in the context of its history, § 1123(b)(3) protects the estate from loss of potential assets. It is not designed to protect defendants from unexpected lawsuits. The words sufficient to satisfy § 1123(b)(3) must be measured in the context of each case and the particular claims at issue: Did the reservation allow creditors to identify and evaluate the assets potentially available for distribution?

316 B.R. at 504.

However, the application of this test is limited in scope. In discussing Browning, Judge Lundin recognized that "[p]erhaps the rule to draw from Browning . . . is that a general reservation of 'causes of action' is not specific enough in the Sixth Circuit to avoid the *res judicata* effect of confirmation with respect to a malpractice action against counsel to the debtor or to the trustee." Id. at 503. Applying this test to the facts before him, Judge Lundin acknowledged that the outcome was "influenced by the fact that preference litigation is fundamentally different than the legal malpractice and breach of duty claims in Browning." Id. at 504. Thus, while this Court should measure the words of reservation in "the context of the case" and "the particular claims at issue," the ultimate question to be decided is still, "Did the reservation allow creditors to identify and evaluate the assets

25

potentially available for distribution?" The claims before this Court are akin to legal malpractice and breach of duty claims. Therefore, the language of reservation must be more detailed than the blanket reservation used in Browning and even more so than is required in preserving preference claims. In re Pen Holdings does not alter the Court's analysis.

Defendants assert that the Plan's retention provision in VIII.D. is a general, blanket reservation in that it only refers to "all rights and causes of action," but fails to specify the types of causes of action being retained. (Docket Entry No. 2, Notice of Appeal, attachment thereto, Exhibit 20 at p. 16). Defendants argue that this provision discloses even less information than the retention provision in Browning.

Defendants' assertion may have merit if VIII.D. was read in isolation and there were no other reservation provisions. However, the Disclosure Statement and Confirmation provide more specific information than that in Browning. The Disclosure Statement provides that "additional litigation will be necessary" and that "the Plan Trustee shall continue to evaluate potential claims against insiders of the Debtor and potential claims against IBM Southeast Employees Federal Credit Union relating to its involvement in promoting Alliance's operations." Id., Exhibit 26 at p. 8.

26

Defendants argue that the reference to "additional litigation will be necessary" was not a reservation. Defendants argue that this statement refers to the Trustee filing additional avoidance actions that are not an issue in this case. The Disclosure Statement states, in relevant part:

## VI. POST-CONFIRMATION ACTIVITIES

Upon confirmation of the Plan, the Trustee anticipates that additional litigation will be necessary. The pending adversary proceedings, as noted above, will continue to be prosecuted by the Plan Trustee. The Plan Trustee shall be responsible for reviewing claims filed by creditors and prosecuting objections to the same, where necessary.

Additionally, the Plan Trustee may file additional avoidance actions. The Plan provides that all actions to avoid liens on the vehicles shall be filed no later than 120 days after the Effective Date. The Plan Trustee shall file all other avoidance actions within the time allotted by statute. The Plan Trustee will also continue investigating the causes of the bankruptcy. If the Plan Trustee determines that the estate has claims against creditors or third parties, the Plan Trustee shall pursue such claims on behalf of the Liquidation Trust. The Confirmation Order will include a finding that the Plan Trustee has standing to pursue each and every claim of the estate.

In addition to potential avoidance actions and claim objections, the Plan Trustee shall continue to evaluate potential claims against insiders of the Debtor and potential claims against IBM Southeast Employees Federal Credit Union relating to its involvement in promoting Alliance's operations.

Id., Ex. 26 at p. 8.

A reading of the three paragraphs lead the Court to a different interpretation. The first paragraph sets forth the three areas of litigation that the Trustee foresees: additional

27

litigation, avoidance actions, and creditors' claims and objections. The first paragraph states that "additional litigation will be necessary," but the next sentence states, "The pending adversary proceedings, as noted above, will continue to be prosecuted by the Plan Trustee." It is the second sentence which refers to avoidance actions. After reading the three paragraphs together it becomes clear that the first sentence actually references the third paragraph dealing with IBMSEFCU. Otherwise, the first two sentences would be redundant. This reading is bolstered by the fact that the second paragraph begins, "Additionally, the Plan Trustee may file additional avoidance actions." This statement refers to more avoidance actions being filed in conjunction with "the pending adversary proceedings." Again, it would render the first sentence superfluous to read "additional litigation will be necessary" as meaning "additional avoidance actions" as Defendants assert.

Further reading reveals that the third paragraph is a summary of the first paragraph and specifies what "additional litigation" involves. The third paragraph begins, "In addition to potential avoidance actions and claim objections." This phrase relates back to the second and third sentences in the first paragraph which pertain to avoidance actions and creditors' claims and objections. The rest of the sentence, "the Plan Trustee shall continue to evaluate potential claims against insiders of the Debtor and

28

potential claims against IBM Southeast Employees Federal Credit Union relating to its involvement in promoting Alliance's operations," relates back to the first sentence in the first paragraph and explains what the phrase, "additional litigation will be necessary," entails.

Defendants also contend that the language, "the Plan Trustee shall continue to evaluate potential claims against insiders of the Debtor and potential claims against IBM Southeast Employees Federal Credit Union relating to its involvement in promoting Alliance's operations," does not provide any detail concerning the causes of action or their potential value to the estate. However, this provision read collectively with the Plan and Confirmation Order does provide more detail, including claims arising from negligent or intentional mishandling of sales taxes collected from Customers and deposited into Alliance tax escrow accounts.

Defendants next challenge the sufficiency of the Confirmation Order. Defendants contend that the vesting provision in the Confirmation Order only specifies, "any and all causes of action that could be brought by a trustee pursuant to chapter 5 of the Bankruptcy Code, or that were held by the Estate against any individual or entity arising out of or relating to the business operations of the Debtor," but it fails to specify exactly what categories of claims are vested in the Trustee. Id., Exhibit 30 at p. 5. The Court disagrees.

29

In addition to the language cited by Defendants above, the Confirmation Order also references "claims that may be asserted by the Plan Trustee relating to liability of any individual or entity arising from negligent or intentional mishandling, if any, of sales taxes collected from Customers and deposited or required to be deposited into Alliance tax escrow accounts." Id. Thus, this provision places any entity that was responsible for handling sales tax moneys, including IBMSEFCU and SSO, on notice that those claims would be preserved.

In response Defendants argue that the provision is limited to the paragraph immediately preceding it, which pertains to a channeling injunction on taxing authorities.[4] Further, Defendants state that the provision is qualified in that the injunction shall not apply to "claims that *may* be asserted." Defendants argue that to determine what "may be asserted" one must look to the vesting provision but no such claims are reserved there. Moreover, if the injunction language does refer to an actual reserved claim, Defendants argue, then such a claim must pertain only to Chapter 5 claims, as provided in the reservation paragraph in the Confirmation Order. Id. Thus, any non-Chapter 5 claims would be barred by *res judicata*.

---

[4]That provision states, in part, "that all state taxing authorities are hereby enjoined from commencing or continuing any action to collect the sales tax liabilities from the Credit Unions or the Credit Unions' customers . . . ." Id.

30

The Court concludes that the Defendants' interpretation of the Confirmation Order's provisions is misplaced. The Confirmation Order specifically states that the injunction "shall not apply to any claims that may be asserted by the Plan Trustee relating to liability of any individual or entity arising from negligent or intentional mishandling, if any, of sales taxes collected from Customers and deposited or required to be deposited into Alliance tax escrow accounts." Id. A plain reading reflects that this language is explaining what is not within the scope of the injunction, that is, the injunction does not preclude those claims against any individual or entity arising from negligent or intentional mishandling of sales taxes collected and deposited into Alliance tax escrow accounts. This is the natural interpretation, when reading the Confirmation Order as a whole. Otherwise, Defendants' interpretation would render this provision, in the words of the Bankruptcy Court, "meaningless." (Docket Entry No. 11) Transcript at p. 9. As the Trustee explained to the Bankruptcy Court, "[T]he sales taxes and the handling of those accounts, that's what this whole case is about." Id. at p. 24.

At the June 12, 2007, hearing before the Bankruptcy Court, the Bankruptcy Court stated:

It sure sounds like they're talking about giving the Plan Trustee the ability to go after individuals or entities involved in negligent or intentional mishandling of sales taxes collected from customers and deposited or required to be deposited in Alliance Tax Escrow Accounts[.]

31

．．．．．

> I guess it puts the whole world on notice that there are
> going to be issues involving the Plan Trustees and sales
> tax.

Id. at p. 10. This Court concurs.

Defendants further contend that even if the disputed provision in the Confirmation Order were construed as a reservation clause, there is not any information concerning the individuals or entities who would be liable for such claims and no information concerning their value. Defendants assert that SSO is not even mentioned in any of the alleged reservation provisions in the Disclosure Statement, Plan and Confirmation Order. Defendants also assert that the Plan and Disclosure Statement do not provide any details or background concerning the "negligent or intentional mishandling of sales taxes." Nor does the Plan and Confirmation Order provide any additional information regarding IBMSEFCU's involvement "in promoting Alliance's operations." Defendants[5] assert that they would not have voted in favor of the Plan had they known the Trustee intended to pursue the claims of the Amended Complaint.

Defendants contend that this case is more similar to In re Kelley, 199 B.R. 698, where the Ninth Circuit Bankruptcy Appellate Panel stated, "[I]f the debtor fails to mention the cause of action in either his schedules, disclosure statement, or plan, then he

---

[5]The Court notes that IBMSEFCU, as a creditor, was the only one entitled to vote on the Plan.

32

will be precluded from asserting it postconfirmation." <u>Id</u>. at 704.
In <u>Kelley</u>, the defendant, South Bay Bank, held a security interest
under a financing agreement. <u>Id</u>. at 700. Initially, the defendant
rejected the proposed chapter 11 plan, but the Kelleys were able to
negotiate a repayment schedule with the defendant in exchange for
the defendant agreeing to vote for the plan and relinquish it's
security interest. <u>Id</u>. at 701. The confirmed plan stated:

> Within thirty (30) days of the date of Plan Confirmation,
> the Debtors shall initiate adversary proceedings to
> contest the amount, allowability, priority and/or secured
> status of any claims which the Debtors believe are not
> proper. The Debtors may at the same time bring any
> counter-claims that they believe proper against any
> creditors asserting claims. The Debtors shall diligently
> pursue all such adversary proceedings. The Debtors shall
> not contest the claim of City National Bank, which claim
> the Debtors accept in its full amount.

<u>Id</u>. at 704.

The Kelleys argued that the inference from the plan language
was that the Kelleys intended to object to South Bay's claim and
that the language stating that they would not object to City
National Bank's claim was another clear statement that they
intended to object to South Bay's claim. The Court, however, found
that the plan language was "little more than a general reservation
of rights." <u>Id</u>.

The disclosure statement provided, "It is possible that the
Kelleys may have various counter claims against South Bay Bank,"
and "Also, as noted above, the proper amount of the debt to South
Bay Bank may be reduced by . . . counter claims which the Kelleys

33

may have against South Bay Bank." Id. The Court found that although the language was a clearer expression of potential causes of action, it did not mention the grounds for those potential claims. Id. The Court also noted that a reason for such vagueness in the disclosure statement may have been that the Kelleys were worried that South Bay would not have voted for the plan had it known that the Kelleys were going to object their claim.

This Court is not persuaded by Defendants' reliance on Kelley. To be sure, the Trustee's Plan, Disclosure Statement and Confirmation Order could certainly have provided more detail. However, the purpose of § 1123(b)(3) "is not [to provide] notice to potential defendants, it is [to provide] notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." In re Pen Holdings, Inc., 316 B.R. at 501. Defendants seem to argue that nothing short of the Trustee attaching a complaint to these documents will be sufficient in apprising creditors of potential claims.

Yet, "Browning does not establish a rule that each reserved claim must be specifically listed. In fact, the Browning court did not note the specific causes of action among the elements of specificity it found lacking in the debtor's reservation of litigation rights." In re Regional Diagnostics, LLC, 372 B.R. at 16. Further, the Court finds Defendants' argument that they would

34

not have voted for the Plan had they known of the Trustee's intentions to pursue the claims is of the Amended Complaint is disingenuous because the Trustee expressly communicated his intentions to them.

Lastly, both parties cite <u>In re SmarTalk Teleservices, Inc.</u>, 487 F. Supp.2d 914, in support of their respective positions. <u>SmarTalk</u> stands for the proposition that a disclosure statement may supplement a plan's general reservation of claims that is found to be insufficient. <u>Id</u>. at 928. There, the district court found that the disclosure statement "made expressed, detailed references to potential claims against [the defendant], which were then being investigated . . . ." <u>Id</u>. 927. While the disclosure statement's language in <u>SmarTalk</u> may have been more detailed in its reference to potential claims that were being investigated than in the case before this Court, the question remains whether any interested party participating in the confirmation process was aware of the Trustee's potential claims against Defendants.

After reading collectively the Plan, Disclosure Statement and Confirmation Order, the Court concurs with the Bankruptcy Court's conclusion that "a plain meaning interpretation of the Disclosure Statement, Plan and Order confirming the Plan, leads to the conclusion that the Trustee adequately preserved the causes of actions he alleges in the [Amended Complaint]" and that only "[a] hyper-technical and tunneled interpretation of the Plan and

35

Confirmation Order is the only way to achieve the outcome urged by [Defendants]." (Docket Entry No. 1, Attachment thereto, Exhibit 18 at p. 9).

Accordingly, the Court concludes that the Trustee's claims of the Amended Complaint, were sufficiently reserved and are not barred by bye *res judicata* doctrine.

## IV. EQUITABLE ESTOPPEL

The Trustee also raises the issue of equitable estoppel. Alternatively, if the Court were to have found that the Trustee did not adequately preserve the claims of the Amended Complaint in the Plan, Disclosure Statement and Confirmation Order, the Court finds that Defendants are equitably estopped from asserting the defense of *res judicata*. The Trustee contends that IBMSEFCU was aware of his intention to reserve claims against it and SSO and that he agreed to make the specific reference to the IBMSEFCU and SSO less specific in the confirmation order at the request of IBMSEFCU's counsel in order to avoid any embarrassment and possible damage to its business interests, which as a result would have been adverse to the estate's interest. Defendants contend that it was not the province of IBMSEFCU to advise the Trustee what is required in preserving claims adequately.

The doctrine of equitable estoppel "precludes a party to a lawsuit from raising a certain defense, regardless of the merits of the defense, because of some improper conduct on that party's

36

part." State Bank of Coloma v. National Flood Ins. Program, 851 F.2d 817, 819 (6ᵗʰ Cir. 1988). "The traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom the estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." In re Davis, 330 B.R. 606, 611 (Bankr. E.D. Tenn. 2005) (quoting Michigan Express, Inc. v. United States, 374 F.3d 424, 427 (6ᵗʰ Cir. 2004)).

The initial draft of the Confirmation Order provided:

**ORDERED** that the assets vested in the Liquidation Trust shall include, but are not limited to, any and all causes of action held by the Estate against IBM Southeast Employees Federal Credit Union, Southeast Services Organization, Inc., Vincent Gene Handy, R. Michael Whitmore, and their respective officers, directors, affiliates and subsidiaries; and it is further

. . .

**ORDERED** that the injunction set forth in ¶ IV.E.2. of the Plan shall not apply to any action against a Credit Union or other entity for turnover or damages based upon such Credit Union's or entity's negligent or intentional failure to perform its responsibilities or duties to collect and/or remit sales and use taxes to the appropriate authorities; and it is further . . . .

(Docket Entry No. 1), attachment thereto, Ex. 10 at pp. 5-6.

The Trustee asserts that IBMSEFCU's counsel requested that specific references to IBMSEFCU and SSO be removed because such references could cause damage to IBMSEFCU. The Trustee asserts that, while he agreed to the request, he made clear that he intended to preserve the claims. Defendants argue that the

37

Trustee's change was part of the negotiation process. However, Defendants do not dispute the Trustee's assertions with respect to IBMSEFCU's request, its reasons for the request and the Trustee's verbalization of his intentions to preserve the claims. Neither do the Defendants argue that they opposed or challenged the Trustee's intentions to preserve the claims, albeit in a less specific form. Based on these acts, the Court concludes that the parties reached an agreement and Defendants now seek to parlay that agreement into a detriment to the Trustee.

Defendants also lose credibility where on the one hand they acknowledge that the Trustee verbalized his intentions to preserve the claims from the initial draft and on the other hand assert that they would not have voted for the Plan had they known the Trustee intended to pursue the claims of the Amended Complaint. Defendants had the initial draft, the Trustee's email explanation, the Trustee's verbalization of his intentions, the revised Order's language of negligence and intentional mishandling of sales taxes collected, and the Disclosure Statement mentioning potential claims against IBMSEFCU. How did they not know? The Court finds that the Defendants' assertions are not credible.

Next, Defendants assert that the Trustee concedes in his brief that he was aware of the issues concerning the language in the initial draft and therefore the Trustee could not have been "duped" by any misrepresentation. Defendants' contention totally ignores

38

the fact that an agreement was reached by the parties, negating any "issues." Defendants are conspicuously silent as to any response they may have made to the Trustee's verbalization of intentions. Nor do they challenge the Trustee's characterization of events-- that the Trustee modified the language in the Confirmation Order at the request of IBMSEFCU's counsel in order to avoid any embarrassment and possible damage to its business interests, which as a result would have been adverse to the estate's interest. Clearly, the Trustee always intended to preserve the claims of the original Order and the modification of the language was a direct result of Defendants' misrepresentation.

Finally, at the hearing before this Court, when the Court asked Defendants' counsel that if the language in the initial draft of the Order had remained would the parties be before the Court, Defendants' counsel admitted that "It'd be a tougher fight." Obviously, the application of *res judicata* would be detrimental to the Trustee.

Accordingly, on alternative grounds, the Court finds that the claims of the Amended Complaint are not barred by *res judicata*.

## V. CONCLUSION

Based on the reasons stated above, the Bankruptcy Court's Order is **AFFIRMED**.

An appropriate Order is filed herewith.

**ENTERED** this the _11_ day of September, 2008.

WILLIAM J. HAYNES, JR.
United States District Judge